HARRI, APPELLANT, *v.* ISAAC, SHERIFF, RESPONDENT.

(No. 8,102.)

(Submitted October 17, 1940. Decided October 31, 1940.)

[107 Pac. (2d) 137.]

154

*Messrs. Booth & Booth,* for Appellant, submitted a brief; *Mr. Edwin S. Booth* and *Mr. Ralph J. Anderson,* Associate Counsel, argued the cause orally.

*Mr. E. E. Fenton,* for Respondent, submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiff appeals from a judgment on the pleadings. Defendant's general demurrer having been overruled, he filed a general denial and later moved for judgment on the pleadings upon several grounds, the only one of which we need consider is that the complaint does not set forth facts sufficient to constitute a cause of action against defendant.

The complaint alleges that at the time in question defendant was the sheriff of Treasure county, Montana, and plaintiff was the owner of certain oil well pipe theretofore used by the Montana Belle Oil and Gas Company in Custer county, under a lease agreement; that in 1937 plaintiff caused the pipe to be hauled to Treasure county and stored on ranch property over which he exercised control; that on July 16, 1937, one G. W. Kirby made an affidavit for search warrant, in which he claimed that he had purchased the pipe from the above named company, that it was stolen from Custer county about June 1, 1937, and that on July 14, 1937, plaintiff admitted to affiant that he had taken the property and caused it to be hauled to the said ranch in Treasure county which he owned or claimed; that a search warrant was issued by the justice of the peace and delivered to defendant directing him, if he found the property, to bring it forthwith before him or to cause it to be guarded; that defendant proceeded under the warrant, found certain pipe at the place named, and appointed one McConnache as a watchman over it; that notwithstanding his duty defendant "either caused a motion to be made or acquiesced therein whereby an order

releasing the property from his custody" was made; that defendant "well knew that plaintiff had not been notified of the fact that said search warrant had been issued in any manner and well knew that no investigation or hearing to determine the true owner of said pipe had ever been held"; that he knew or should have known the contents of the affidavit and knew the contents of the search warrant and the order of release, and that "notwithstanding that he was charged by law with the duty and responsibility of safely keeping the said property until ordered to turn the property over to the owner and in utter disregard of the law and the rights of the plaintiff herein he accepted said order releasing the property and did release the property"; that from the statements in the affidavit defendant knew or should have known that plaintiff had some title or interest in the property; "that in utter disregard of the law and in a negligent and careless manner he delivered a copy of the said order of release to G. W. Kirby to be delivered to the said Alex McConnache as authority * * * to release the property, well knowing that the said G. W. Kirby was desirous of obtaining possession" of it; "that because of the care-less, negligent and unlawful handling [of] said search warrant and the property seized thereunder and because defendant carelessly and negligently gave the said G. W. Kirby a copy of said order of release for delivery to the said watchman appointed by the defendant, the defendant placed the said G. W. Kirby in a position where he could obtain possession of said property"; that Kirby took possession of the property, hauled it away and still "has it and the plaintiff has been deprived and still is deprived of his property"; that plaintiff has made demand on defendant for the property but defendant has not returned it; and that its reasonable value is $1,330.

Copies of the affidavit, search warrant and order of release were annexed to the complaint as exhibits. The prayer was for the return of the property, or its reasonable value of $1,330, with interest from July 17, 1940, and for $500 exemplary damages, costs, and such further relief as the court should deem just. It was not stated when the release was made, but since

the order was dated July 17, 1940, and the prayer was for interest from that date, we may assume that the sheriff's act of giving up possession happened on that date, which was the day after the search warrant was issued and served.

It is elementary that judgment on the pleadings is not warranted if the allegations of the complaint, liberally construed, state a cause of action on any theory. In this case plaintiff's theory is rather indefinite but he says in his brief: "The complaint in this action alleges ownership and right of possession to the property in the plaintiff, the taking of the property from the plaintiff by the defendant sheriff and its subsequent release in violation of law. It also alleges that by reason of the subsequent release the property was lost to the plaintiff. The allegations and proof of these four elements are sufficient to constitute a cause of action and entitles the plaintiff to relief against the defendant. * * * It is our contention that the possession of this property is still in the sheriff. If the court agrees with this view then a cause of action in replevin has been stated. If a cause of action in replevin has not been stated, a good cause of action has been stated in conversion or in any event a cause of action on the case is contained in the complaint. The plaintiff is the owner of the property and entitled to possession. By reason of the act of the sheriff the property has been lost to the plaintiff."

Defendant contends that if any cause of action in claim and delivery is shown, it is one, not against him, but against Kirby, because the complaint alleges that after the release Kirby obtained possession of the property, hauled it away and still has it. Plaintiff makes the rejoinder that the complaint shows that the defendant wrongfully allowed the property to go out of his possession, that he therefore still has constructive possession of it; and that his constructive possession as against plaintiff's alleged ownership and right of possession comprises a cause of action in claim and delivery.

But "to state a cause of action the complaint must allege, not only the ownership or right of possession in the plaintiff, but that the defendant is *wrongfully* in possession."

(*Hennessy Co.* v. *Wagner*, 69 Mont. 46, 220 Pac. 101, 102.) If the allegations show that defendant is in constructive possession of the property, they also show that his possession is by virtue of his execution of the search warrant. A sheriff, or other ministerial officer, is justified in the execution of and must execute all process and orders regular on their face and issued by competent authority, whatever may be the defect in the proceedings upon which they were issued. (Sec. 4788, Rev. Codes.) Obviously, the sheriff's possession under the warrant, whether actual or constructive, is not wrongful (1) unless he is not justified in executing it because it is either (a) not regular on its face or (b) not issued by competent authority; or (2) unless the property held is not that described by the writ; or (3) unless the writ, if originally effective, is no longer so. There is no contention here that the writ was not issued by competent authority, nor that the property is not that described in the writ, nor that anything has subsequently happened to remove whatever effectiveness it originally had. In fact counsel for plaintiff contend, on the contrary, that the order of release was void so that it could have no effect on the search warrant or defendant's possession under it.

The only remaining question with reference to this phase of the case is whether the complaint shows that the search warrant is not "regular on its face." The only expression in the complaint suggesting any question about the writ's validity is the term "purported search warrant," and the writ itself, a copy of which is annexed to the complaint as an exhibit, together with a copy of the affidavit for the writ, is in the statutory form and appears entirely regular. No argument is made here that the search warrant is not valid. Plaintiff does say in his brief: "We believe that the search warrant issued is void." But he disclaims any reliance upon that belief by failing to argue the question, and by immediately adding: "Whether valid or void in this instance the question now presented to the court would be answered in the same manner." Plaintiff has failed to make out a cause of action in claim and delivery.

The next question is whether a cause of action is stated for damages for defendant's wrongful acts, defaults or negligence. Plaintiff's contention seems to be that if the facts stated are insufficient to constitute a claim and delivery action, they are sufficient to constitute a cause of action in the nature of conversion, or trespass on the case.

A conversion is any unauthorized act which deprives a man ██ of his property permanently or for an indefinite time. (*Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302.) If any conversion is alleged in the complaint, it is a conversion by Kirby and not by defendant, either personally or as Kirby's accomplice, since no facts are alleged showing that defendant instigated, assisted or participated in Kirby's alleged wrongful act. (65 C. J. 63, 64, sec. 103.)

The allegation is not that defendant conspired with Kirby or was his accomplice in the removal of plaintiff's property from plaintiff's possession, or that he took the property from plaintiff's possession under the search warrant and wrongfully turned it over to Kirby under circumstances constituting defendant's actions a conversion by him, but that his actions in connection with the release of the property somehow made possible Kirby's conversion of it, by putting him "in a position where he could obtain possession" of it.

This brings us to the question whether the complaint states ██ a cause of action against defendant in the nature of trespass or trespass on the case. Such an action is not stated unless the injury complained of is shown to be the direct and proximate result of defendant's wrongful or negligent acts or defaults. (*Fleming* v. *Lockwood*, 36 Mont. 384, 92 Pac. 962, 14 L. R. A, (n. s.) 628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263.)

The defendant's acts alleged to be wrongful and to have resulted in the loss of plaintiff's property are: that he caused or acquiesced in the motion which resulted in the order releasing the property from his custody; that in disregard of the law and plaintiff's rights, he accepted the order of release and released the property; that he negligently delivered a copy of the

release order to Kirby to be delivered to the keeper, knowing that Kirby desired to obtain the property; and that by reason of the above facts he placed Kirby "in a position where he could obtain possession of said property" and that Kirby took it away and still has it.

The complaint alleges that the property belonged to plaintiff and was in his possession; that it was seized by defendant under the writ and placed in charge of the keeper, and that defendant *released* it pursuant to the court order. "Release" means "to let loose, to set at liberty, to let go." (*National Bank of Montana* v. *First National Bank,* 71 Mont. 242, 228 Pac. 80, 81.) It cannot be taken to mean a delivery to someone, but merely a relinquishment to the situation or custody from which the property was seized—not the affirmative establishment of a new situation, but a restoration of the old. Since it was not removed from plaintiff's premises, the release automatically restored it to plaintiff's possession.

The facts alleged therefore show that Kirby's taking of the property was from plaintiff's possession and not from defendant's, and the ultimate question for determination is whether defendant's acts, or any of them, were the proximate cause of plaintiff's loss. Plaintiff contends that the order of release was void, that defendant was not justified in causing or acquiescing in its making, or in releasing the property under it, or in giving a copy of the order to Kirby for delivery to the watchman. But it is unnecessary to consider any of those objections, for in any event the defendant's acts were not the proximate cause of the injury complained of. In this connection we must bear in mind that, as stated above, the release merely restored the property to plaintiff's possession, and that plaintiff's loss of that possession was the proximate result of Kirby's voluntary act entirely independent of any acts by defendant.

The term "proximate result" means a result that would naturally and ordinarily follow from the alleged act complained of, unbroken by any new and independent cause. "Proximate" means the same in the term "proximate result" as in the term

"proximate cause." The latter term has been repeatedly defined by this court as a cause which, in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury or loss, *and* without which the injury or loss would not have occurred. (*Edquest* v. *Tripp & Dragstedt Co.*, 93 Mont. 446, 19 Pac. (2d) 637.)

For defendant's actions to constitute the proximate cause of the loss, it must not only be shown that without them the loss would not have occurred, but also that they have produced the loss without the help of any new, independent cause. Certainly under the facts alleged Kirby's act of taking the property was a new cause independent of defendant's acts; but even if that were not an insuperable obstacle to plaintiff's contentions, it cannot be gathered from the allegations that without defendant's acts the alleged conversion by Kirby would not have occurred.

Plaintiff's argument is that by reason of defendant's acts in accepting and giving effect to the release order and giving a copy of it to Kirby for delivery to the watchman he placed Kirby in a position to take the property. Obviously defendant's acts could serve to place Kirby in a position to take it, and still not constitute acts without which he would not have taken it.

There is no allegation that but for defendant's acts Kirby would not have known of the order of release, and the presumption is clearly otherwise, since Kirby was the one upon whose ex parte application the search warrant was issued, and it was a public record (sec. 10544, Rev. Codes), which he or any other person was entitled to see (sec. 10542). We cannot conclude from the allegations that the delivery of a copy to Kirby gave the latter his only notice of the release or that he would not otherwise have known of it. The allegations on the point are merely that knowing of Kirby's desire to obtain the property, defendant gave him a copy of the release order for delivery to the keeper, and thus put Kirby "in a position where he could obtain possession" of the property. The objection is not that in notifying Kirby and not plaintiff of the release he caused plaintiff to believe that the property was still *in custodia legis*,

and thus lulled him into the belief that it was still safe from seizure and removal by Kirby or anyone else, for plaintiff alleges in his complaint that the defendant knew that plaintiff had not been informed that the search warrant had been issued, and states in his brief that ''defendant [obviously meaning plaintiff] had not been notified of the issuance or service of the search warrant.'' There can be no contention, therefore, that plaintiff was misled or discriminated against by defendant's failure to inform him of the release.

The only other possible theory upon which liability by defendant can be argued is that by allowing Kirby to deliver the release order to the keeper, defendant gave him the opportunity to be on the ground when the keeper was informed of the release so as to relinquish actual possession; but all that argument can mean is that thereby Kirby was given the first chance to get away with the property after its restoration to plaintiff's possession. The same thing would be true if the defendant had sent the notice by someone else who then wrongfully took the property. It is of course not contended that by giving Kirby the notice to deliver, defendant thereby made Kirby his agent for the conversion of the pipe. The additional fact that defendant knew from the search warrant affidavit that Kirby claimed and wanted the property would give him no reason to believe that Kirby would take it either wrongfully or rightfully immediately upon its release to plaintiff.

Plaintiff's pleaded conclusion was that by the acts complained of defendant put Kirby in a position to take the property. But the net effect of all the facts alleged was to restore the property to the same situation in which it was prior to the execution of the search warrant; and it is inconceivable how defendant can be any more at fault for carrying out the court's order and thus restoring the prior situation than he was for the prior situation itself. The defendant's manner of execution of the release order gave Kirby no better opportunity to take the property than Kirby had before the search warrant was issued, nor than he would have had in any event after the release became effective. The wrong, if there was one, was committed by Kirby's own

voluntary act after the defendant's release of the property, and no facts are alleged involving defendant in it or making him responsible for it. Certainly it would be quite revolutionary to hold that defendant had bound himself for Kirby's unlawful act, merely because by defendant's independent act, without any circumstances making him Kirby's accomplice or co-conspirator, Kirby was placed in a position where he could by his own independent volition perform the unlawful act. As well stated in 3 C. J. S., Agency, page 190, section 256, "no one ever understood that the mere fact that a person made it possible for another to commit a wrongful act bound him for such acts of the other person."

The court committed no error in granting the motion and entering judgment for defendant on the pleadings. The judgment is affirmed.

ASSOCIATE JUSTICES MORRIS, ANGSTMAN, ERICKSON and AR-NOLD concur.

Rehearing denied November 28, 1940.